UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:12-00013 |
| | ) | JUDGE CAMPBELL |
| MANILA VICHITVONGSA | ) | |

ORDER

Pending before the Court are the Defendant's Motion For Judgment Of Acquittal (Docket No. 794), as well as the Government's Response (Docket Nos. 812) in opposition. For the reasons set forth herein, the Motion is DENIED.

After a week-long trial, the Defendant was convicted of certain crimes arising out of two separate home invasion robberies – the first, occurring on June 10, 2011 in Lavergne, Tennessee, and the second, occurring on June 27, 2011 in Elmwood, Tennessee. (Docket Nos. 78, 730, 732). Through the pending Motion, the Defendant argues that he is entitled to an acquittal of his convictions under Rule 29(c)(1) of the Federal Rules of Criminal Procedure because the Government failed to establish proof sufficient to sustain the convictions.

In reviewing a motion for a judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure, a court must view the evidence in the light most favorable to the Government, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Welch, 97 F.3d 142, 148 (6th Cir. 1996); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court may not independently weigh the evidence, nor judge the credibility of the witnesses who

testified at trial. Id.

Specifically, the Defendant argues that: (1) the Government failed to establish the four separate conspiracies charged in the Indictment, and therefore, under the Double Jeopardy Clause, he should be acquitted of all but one conspiracy count; (2) his four convictions under 18 U.S.C. § 924(c) violate the Double Jeopardy Clause; and (3) the Government failed to prove that the two home invasion robberies affected interstate commerce, the jurisdictional nexus required by 18 U.S.C. § 1951.

In connection with each home invasion robbery, the Indictment charged the Defendant with a conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and a conspiracy to engage in drug trafficking, in violation of 21 U.S.C. § 846. (Docket No. 78). The Defendant contends that the proof at trial did not establish four separate conspiracies.

The Double Jeopardy Clause prohibits multiple prosecutions for the same offense. With regard to the crime of conspiracy, the Sixth Circuit has adopted a "totality of the circumstances" test to determine whether the allegations in an indictment support a conviction of more than one conspiracy. United States v. Sinito, 723 F.2d 1250, 1256 (6th Cir. 1983). The test requires the court to consider the following elements: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place. Id. Where several of these factors differ between the conspiracies, the court has explained, the conclusion follows that the alleged conspiracies are

2

separate and distinct offenses. Id., at 1257. See also United States v. Kistner, 2014 WL 5438810, *3-4 (6th Cir. Oct. 28, 2014).

As the Defendant's challenge is made post-trial, the Court will apply these factors to the evidence adduced at trial. The two home invasions occurred approximately two weeks apart, at separate locations, and involved different participants. In addition, the evidence indicated that the Defendant targeted the home in the second robbery, and Co-Defendant Nickless Whitson targeted the home in the first robbery. For these reasons, the Court is persuaded that the Hobbs Act robbery conspiracy charged in Count One and the drug trafficking conspiracy charged in Count Three are separate and distinct from the Hobbs Act robbery conspiracy charged in Count Five and the drug trafficking conspiracy charged in Count Seven.

As for the conspiracies charged on the same date with the same participants, the object of each conspiracy is a different statutory offense – Hobbs Act robbery or drug trafficking. Thus, Counts One and Three are separate and distinct from each other, as are Counts Five and Seven. Applying the Sinito factors to the evidence adduced at trial, therefore, the Court concludes that the Defendant's four conspiracy convictions do not violate the Double Jeopardy Clause.

Next, the Defendant argues that two of his four convictions under 18 U.S.C. § 924(c)[1]

---

[1] Section 924(c) provides, in pertinent part, as follows:

(c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a

3

violate the Double Jeopardy Clause and should be vacated. The Defendant contends that each home invasion robbery supports only one Section 924(c) count, even though each count charges a different predicate offense.

Count Two charged the Defendant with using, carrying, and brandishing firearms during and in relation to a crime of violence – conspiracy to commit Hobbs Act robbery – during the Lavergne robbery. Count Four charged the Defendant with using, carrying, and brandishing firearms during and in relation to a drug trafficking crime – conspiracy to possess with the intent to distribute cocaine – during the Lavergne robbery. Count Six charged the Defendant with using, carrying, brandishing, and discharging firearms during and in relation to a crime of violence – conspiracy to commit Hobbs Act robbery – during the Elmwood robbery. Count Eight charged the Defendant with using, carrying, brandishing, and discharging firearms during and in relation to a drug trafficking crime – conspiracy to possess with the intent to distribute marijuana – during the Elmwood robbery.

The Sixth Circuit has held that separate, predicate offenses that require proof of different facts can support separate convictions under 18 U.S.C. § 924(c):

---

> firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> > (i) be sentenced to a term of imprisonment of not less than 5 years;
> >
> > (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
> >
> > (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

4

Morales Angeles asserts that the testimony at trial established that he only used or displayed a gun on one occasion – when he initially abducted Garcia – and therefore only one, not both, of his convictions under 18 U.S.C. § 924(c) on Counts Three and Five can stand. The district court properly rejected this argument.

It is well-settled that 'a court may not impose more than one sentence upon a defendant for violations of section 924(c) which relate to but one predicate offense.' United States v. Sims, 975 F.2d 1225, 1233 (6th Cir.1992). However, '[w]e have upheld multiple convictions and sentences under 18 U.S.C. § 924(c)(1) so long as such convictions are based on separate predicate acts.' United States v. Graham, 275 F.3d 490, 519-20 (6th Cir.2001); see also United States v. Burnette, 170 F.3d 567, 572 (6th Cir.1999) ('It is now firmly established that the imposition of separate consecutive sentences for multiple § 924(c) violations occurring during the same criminal episode [is] lawful.'). The question we must answer then is whether Count Three – use of a firearm in relation to the kidnapping of Garcia – relies on a separate predicate act from Count Five --use of a firearm in relation to the carjacking.

It is clear that when predicate offenses consist of non-identical conduct and are not committed simultaneously, these offenses are separate predicate acts that can support multiple convictions under 18 U.S.C. § 924(c). Compare Graham, 275 F.3d at 520-21 (finding that a drug trafficking offense and a conspiracy to commit crimes against the United States were separate predicate acts since they 'were not committed simultaneously, nor did they consist of identical conduct') and Burnette, 170 F.3d at 572 (upholding two convictions under § 924(c) where 'the kidnapping occurred significantly before, and independent of, the actual bank robbery') with United States v. Johnson, 25 F.3d 1335, 1338 (6th Cir.1994) (en banc) ('[P]ossession of one or more firearms in conjunction with predicate offenses involving simultaneous possession of different controlled substances should constitute only one offense under § 924(c)(1).') *Further, while a temporal gap between predicate offenses may bolster a showing that predicate acts are separate, predicate offenses need not occur at different times in order to support multiple § 924(c) convictions.* See United States v. Nabors, 901 F.2d 1351, 1353, 1358-59 (6th Cir.1990) (finding that the predicate offenses of drug trafficking and a crime of violence – either attempted murder of a federal agent or assaulting a federal agent with a deadly weapon – supported two separate § 924(c) convictions, even though the drug trafficking occurred simultaneously, at least in part, with the crime of violence). Rather, the fact that each offense requires proof of facts not required by the other offense appears to be sufficient to show that the predicate acts are separate. Id. at 1358.

5

In this case, the predicate offenses of kidnapping, which requires proof of the unlawful abduction and holding of a person, and carjacking, which requires proof of the taking of a motor vehicle from a person by force and violence or intimidation, clearly involve different conduct and thus are separate predicate acts. See 18 U.S.C. §§ 1201 & 2119. Accordingly, because Counts Three and Five are based on separate underlying predicate acts, Morales Angeles's conviction on both counts does not violate the Double Jeopardy Clause. The district court did not err in denying Morales Angeles's motion for judgment of acquittal or a new trial made on these grounds.

United States v. Angeles, 484 Fed. Appx. 27, 2012 WL 1940344, at * 6-7 (6th Cir. May 30, 2012)(emphasis added). See also United States v. Cole, 526 Fed. Appx. 638, 640-42 (6th Cir. May 20, 2013). Based on this authority, the Court concludes that the Defendant's four 924(c) convictions do not violate the Double Jeopardy Clause.

Finally, the Defendant argues that he should be acquitted of Counts One and Five because the Government failed to prove that the two home invasion robberies affected interstate commerce as required by the Hobbs Act, 18 U.S.C. § 1951.[2] The Defendant relies principally on

---

[2] Section 1951 provides, in pertinent part, as follows:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section--

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his

6

United States v. Wang, 222 F.3d 234, 239-40 (6th Cir. 2000), which held that in order to show that a robbery affected interstate commerce, for purposes of the Hobbs Act, where the victim is an individual rather than a business, the government must prove a substantial connection between the individual victim and a business engaged in interstate commerce.

Since the Wang decision, however, the Sixth Circuit's determination of what must be shown to satisfy the "affecting interstate commerce" requirement when the victim is a private individual has evolved. In a case with facts similar to those involved here, the court held that the robbery and murder of an individual marijuana and cocaine dealer affected interstate commerce. United States v. Ostrander, 411 F.3d 684, 691-92 (6th Cir. 2005). In reaching its decision, the court pointed out that the purported drug deal with the victim involved too large an amount for personal use, that the cocaine and marijuana usually sold by the victim originated in Latin America, and that "the robbery and murder obviously reduced the amount of drugs [the victim] could buy and sell in interstate commerce." 411 F.3d at 692. The court cited the Seventh Circuit decision in United States v. Bailey, 227 F.3d 792, 798 (7th Cir. 2000) as holding that for purposes of the Hobbs Act, "'robbery of cocaine dealers generally has an effect on commerce.'" Id. The

---

company at the time of the taking or obtaining.

\* \* \*

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

7

court also distinguished Wang on its facts:

> The victims [in Wang] were robbed in their home; only some of the money came from the business; only a small amount of money was stolen; and the government showed no actual effect on interstate commerce. For instance, the restaurant did not shut down and the owners did not cease to order goods in interstate commerce.

Ostrander, 411 F.3d at 691.

The Sixth Circuit's subsequent cases involving drug traffickers and Hobbs Act convictions have cited and are in accordance with the holding in Ostrander. United States v. Cecil, 615 F.3d 678, 691 (6th Cir. 2010)(". . . illegal commerce counts as commerce for Hobbs Act purposes . . . Assuming, arguendo, that the government is indeed required to show that the drugs moved across state lines, it has done so."); United States v. Sease, 659 F.3d 519, 526 (6th Cir. 2011)("Sease concedes that robbing drug dealers is a proper basis for conviction under the Hobbs Act."); Purnell v. United States, 2012 WL 3667994 (6th Cir. Aug. 27, 2012)("The sale of cocaine invariably affects interstate commerce. . . Parnell's act [robbery] deprived the CI of his 'buy money' to make a drug transaction involving interstate commerce. . . . Purnell's very relationship with the CI was based solely on interstate commerce and an economic transaction" [distinguishing Wang and other cases.]). Other circuits have also cited Ostrander with approval. See, e.g., United States v. DeCologero, 530 F.3d 36, 68 (1st Cir. 2008)("The robbing of a drug dealer typically has the required nexus with interstate commerce."); United States v. Walker, 657 F.3d 160, 182 (3rd Cir. 2011)(". . . several other courts of appeals have found that stealing drugs that were produced out of state from a drug trafficker satisfies the interstate commerce element of the Hobbs Act.")

Relying on the Sixth Circuit decision in United States v. Turner, 272 F.3d 380 (6th Cir. 2001) and the Seventh Circuit decision in United States v. Peterson, 236 F.3d 848 (7th Cir. 2001), the Defendant argues that the Government must prove that the drug source originated from out-of-state or that the victim sold to out-of-state customers, and that such proof was lacking at his trial. In Turner, the Sixth Circuit reversed the defendants' conspiracy to commit Hobbs Act robbery convictions because the government failed to prove that the victim's gambling operation affected interstate commerce. In Peterson, the Seventh Circuit reversed the defendants' Hobbs Act robbery convictions because the government failed to prove that the victim's source of marijuana originated out-of-state, or that the victim sold drugs to out-of-state customers.

The proof at the Defendant's trial, by contrast, was sufficient to support the jurisdictional nexus required by a charge of conspiracy to commit Hobbs Act robbery under Section 1951. According to the testimony adduced at trial, the Defendants agreed to rob the Lavergne house in an effort to obtain a large amount of cash, derived from drug sales, and cocaine. Although he was not at home at the time of the robbery, Christopher Leggs testified that he lived at the residence in Lavergne that was robbed, and that he was in the business of buying and selling cocaine at the time of the robbery. (Docket No. 775, at 57-59, 65). Agent Matthew Chance of the Drug Enforcement Administration testified that cocaine originates from outside the United States, and more specifically, is not grown in the state of Tennessee. (Docket No. 779, at 81-82). Similarly, the testimony at trial also showed that the Defendants agreed to rob the Elmwood house in an effort to obtain a large amount of cash, derived from drug sales, and marijuana. The testimony of Blake Byrd and Daniel Crowe, as well as the victims, supports the inference that

9

the Defendants expected to find large sums of cash and high quality marijuana, obtained principally from British Columbia. (Docket No. 778, at 14-20, 99-101, 103); (Docket No. 779, at 83).

Having considered all the evidence adduced at trial, the Court concludes that there was sufficient evidence from which the jury could have found that the robberies the Defendants agreed to commit, as charged in Counts One and Five, affected interstate commerce. Therefore, the Defendant's request to vacate his convictions of Counts One and Five is denied.

It is so ORDERED.

                                                   _____
                                                   TODD J. CAMPBELL
                                                   UNITED STATES DISTRICT JUDGE